UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| WATEC CO., LTD., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> JOHN PALMIERE, *et al.*, <br><br> Defendants. | 2:06-cv-00969-RCJ-LRL <br><br> MOTION FOR RULE 37(b)(2)(A)(vi) TERMINATING SANCTIONS (DEFAULT JUDGMENT) (#81) |

**REPORT & RECOMMENDATION**

This action is brought by Watec Company, Ltd. ("Watec Japan") and Watec America Corporation ("Watec America") (collectively "plaintiffs") against Rock House Products International, Inc. ("RHP") and its president, John Palmeri ("Palmeri") (collectively "defendants"), for intentional trademark infringement and unfair competition in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and unfair competition/deceptive trade practices and intentional interference with prospective economic advantage under state law. Compl. (#1). Plaintiffs seek entry of default judgment against defendants for their purported willful and continued violation of this court's May 8, 2007 (#28) and November 21, 2007 (##64,65) discovery orders. Plaintiffs also request the reasonable expenses, including attorney's fees and costs, incurred in making the Motion (#81). Defendants have filed an Opposition (#87), and plaintiffs a Reply (#114). Also filed on this matter are the Declaration of Orlando Cabandy in Support of Motion for Terminating Sanctions and Monetary Sanctions (#82), Plaintiffs' Evidentiary Objections to the Declaration of Kenneth P. Childs in Support of Defendants' Opposition (#115), the Supplemental Declaration of Orlando Cabandy (#116), and Defendants' Reply to Plaintiffs' Evidentiary Objections to the Declaration of Kenneth P. Childs (#126).

. . .

## BACKGROUND

On October 11, 2006, plaintiffs propounded their first Request for Production of documents. *See* Decl. (#39) at 2. Three months later, plaintiffs filed a motion to compel complete responses to their document requests. Mot. (#21). On May 8, 2007, this court granted the Motion (#21), ordering defendants to produce all documents called for in Request for Production Nos. 2 and 17 without objection, not later than May 21, 2007. Order (#28) at 2. Request No. 2 sought "[a]ll of RHP's business records, sales records, invoices and receipts evidencing or concerning the purchase and/or sale of 'RHP' and 'Rock House' branded cameras from January 1, 2004, to the present." Exh. 1 to Decl. (#22) at 5. Request No. 17 similarly asked for "[a]ll documents evidencing, referring or relating to the purchase and/or manufacture of 'RHP' and 'Rock House' branded products, from January 1, 2004, to the present." *Id.* at 7. This court also ordered defendants to pay to counsel for plaintiffs the sum of $850 as the reasonable attorney's fees incurred in making the motion (#21). Order (#28) at 2.

Despite the Order (#28), defendants failed to produce any responsive documents or pay the monetary sanctions by May 21, 2007. *See* Decl. (#39) at 3. On June 1, 2007, plaintiffs sent a meet-and-confer letter to counsel for defendants, advising that RHP was in violation of this court's Order (#28) and that unless RHP complied by June 7, 2007, plaintiffs would file an *ex parte* application seeking preclusion sanctions against defendants barring them from contesting damages. *Id.*, Exh. 2 at 5. On June 7, 2007, defendants produced what were purported to be fully responsive documents. *Id.*, Exh. 3 at 8-9. Defendants failed, however, to provide a written and verified supplemental response confirming that they fully complied with the Order (#28). *See id.* at 3. Moreover, while defendants produced some purchase and sale information for the period January 2004 to June 2007, plaintiffs contended that the documents were merely database summaries, rather than source documents such as paper purchase and sales invoices or specific data entered into RHP's computers from those invoices. *See id.*

On June 14, 2007, plaintiffs served a Notice of Deposition on RHP Products International, Inc. (the "Notice"), in accordance with Rule 30(b)(6) of the Federal Rules of Civil Procedure. Exh. 4 to

Decl. (#39) 15-19. Among the topics designated in the Notice were RHP's purchase of products on which it placed the "RHP" brand, from March 1, 2003 to present; the manufacturer and/or company from which RHP purchased the products on which it placed the"RHP" brand; the customers of "RHP" branded products; and the sales of "RHP" branded products from March 1, 2003 to present. *Id.*, Exh. 4 at 17. Palmeri was designated as the person most knowledgeable on behalf of RHP. *Id.*, Exh. 5 at 7. *See* Fed. R. Civ. P. 30(b)(6). During his deposition, Palmeri stated that RHP maintained all records related to the purchase of products on which it placed the "RHP" brand. *Id.*, Exh. 6 at 10-11. When asked what documents he would consult to identify the companies from which RHP purchased "RHP" branded products, assuming he had all his documents in front of him, Palmeri said, "Just my inventory list." *Id.*, Exh. 7 at 13. Palmeri admitted, however, that he had not produced the "inventory list" as part of the production in this case. *Id.*, Exh. 7 at 14. He also testified that he "most likely" had purchase invoices dating back to at least 2001, and that those invoices "should have" been produced. *Id.*, Exh. 8 at 17-18.

Based on Palmeri's deposition testimony, counsel for plaintiffs sent a meet-and-confer letter to defendants' counsel on July 20, 2007, stating that defendants had not complied with this court's discovery order (#28), and demanding defendants' immediate compliance through production of relevant documents by July 27, 2007. Exh. 9 to Decl. (#39) at 20-21. In addition to complete inventory records as well as invoices and purchase orders for WATEC, WAT, LCL and RHP branded products,[1] plaintiffs demanded production of request-for-quotes ("RFQs") for all such products, recorded communications with customers and vendors concerning such products, advertisements and billing documents concerning WATEC, WAT and LCL products, RHP's 2006 tax returns, and complete RHP financial statements for the relevant years. *Id.*, Exh. 9 at 20. Counsel for defendants responded by letter that his clients had already produced financial documents, sales documents and tax returns. *Id.*, Exh.

---

[1] Watec Japan manufactures and sells charge-coupled device ("CCD") security cameras and accessories under the trademarks "WATEC" and "WAT." Compl. (#1) at 2. It owns the United States trademark registrations over the WATEC and WAT trademarks. *Id.* Watec Japan's American distributor, Watec America, sells Watec Japan's products under the WATEC and WAT trademarks, and sells its own cameras and accessories under the trademark "LCL." *Id.*

3

10 at 2.

On August 1, 2007, plaintiffs filed their Motion for Fed.R.Civ.P. 37(b)(2) Evidentiary Preclusion Sanctions Against Defendant Rock House for Violating the Court Order to Produce Documents to Plaintiff and Pay it Monetary Sanctions; Request for Monetary Sanctions in the Amount of $3500.00 (#38). Plaintiffs contended that although defendants had produced some documents in response to plaintiffs' July 20, 2007 meet-and-confer letter,[2] they were inadequate and untimely. Mot. (#38) at 4-7; Reply (#49) at 3. Plaintiffs also stated that defendants failed to pay the previously imposed monetary sanctions. *Id.* For allegedly violating the discovery order (#28), plaintiffs argued that RHP should be precluded from introducing any evidence, testimonial or otherwise, to contest the amount of plaintiffs' trademark damages. *Id.* at 7-10. Plaintiffs also requested that RHP be ordered to pay them $3,500 in attorneys' fees and expenses incurred in bringing the motion. *Id.* Defendants did not address or otherwise dispute their alleged failure to comply with monetary sanctions. *See* Opp'n (#47); *see also* Order (#28). They did assert, however, that they produced all documents responsive to Request for Production Nos. 2 and 17, albeit not until June 7, 2007, more than two weeks after the deadline set by this court. *Id.* at 3-5; Order (#28) at 2. Defendants also claimed that certain documents referenced in plaintiffs' July 20, 2007 meet-and-confer letter (*viz.*, RFQs and inventory records) were not previously sought in Request for Production Nos. 2 and 17, and that other documents (*viz.*, RHP's 2006 tax returns) were not yet available; thus, defendants contended that they could not be in violation of the Order (#28) in those respects. Opp'n (#47) at 5-6; Exh. 9 to Decl. (#39) at 20-21.

In one of its November 21, 2007 discovery orders, this court found that defendants' June 2007 and August 2007 disclosures largely satisfied Order #28, albeit untimely, as they included information responsive to plaintiffs' discovery requests. Order (#64) at 5. However, this court determined that the purchase and sale data provided by defendants was not adequate. *Id.* at 5-6. The data appeared to

---

[2] On August 8, 2007, defendants submitted their Fourth Supplement to Discovery Disclosures Pursuant to Rule 26(f). Exh. E to Opp'n (#48). The disclosure included inventory records, RFQs, a Google advertisement, and RHP's 2006 tax returns. *See id.*

4

represent database summaries of purchase and sales data only; therefore, it was not the information plaintiffs needed to independently calculate damages (*i.e.*, detailed profit and loss data). *See id.* (citations omitted). Defendants were thus ordered to produce, not later than December 14, 2007, all electronically stored purchase and sales data entered from the original paper invoices as called for by Request for Production Nos. 2 and 17. *Id.* at 6 (citations omitted). If such detailed level of information was not available electronically, defendants were to provide all relevant hard copies of original purchase and sales invoices. *Id.* (citations omitted). This court declined, however, to impose preclusion sanctions at that time because defendants had produced most of the documents required by the Order (#28). *Id.* (citations omitted). Instead, defendants were ordered to pay the reasonable expenses, including attorney's fees and costs, incurred by plaintiffs in making the Motion (#38), as well as the sum of $850 as the reasonable attorney's fees incurred in making their previous Motion (#21), pursuant to Order #28. *Id.* at 6-7.

Also on November 21, 2007, this court granted plaintiffs' Motion to Compel Defendant Rock House Product's Further Responses to Plaintiff's First Set of Requests for Production of Documents; Request for Monetary Sanctions in the Amount of $2,500.00 (#40). Order (#65). Pursuant to the Order (#65), defendants were to provide to plaintiffs all documents called for in Request for Production Nos. 6, 8, 9 and 11 not later than December 5, 2007. *Id.* at 3. Request No. 6 sought documents concerning the purchase and/or sale of "WATEC," "WAT" and "LCL" branded cameras, from January 1, 2000, to the present. Exh. 1 to Decl. (#41). Request Nos. 8, 9 and 11 sought records concerning various communications between RHP and third-parties and customers. *See* Exh. 15 to Decl. (#41). While this court found that the information sought in the latter requests was not reasonably accessible (as there were tens of thousands of recorded telephone conversations, filed neither by name nor customer number), it determined that the importance of the requested information to the issues at stake in the litigation, and the amount in controversy, justified an order compelling further responses to the requests. Order (#65) at 2. Hence, this court ordered defendants to perform a more thorough search of their telephone records and to provide plaintiffs all documents responsive to Request for Production Nos. 8,

5

9 and 11, in addition to those pertaining to Request for Production No. 6. *Id.* at 3. This court also ordered defendants to pay the reasonable expenses, including attorney's fees and costs, incurred by plaintiffs in making the Motion (#40). *Id.*

Plaintiffs subsequently filed affidavits of fees and costs (##66,67) incurred by counsel in making their motions (##38, 40). After considering the affidavits and defendant's Opposition (#71), this court found that the time expended and fees incurred were somewhat excessive. Order (#74) at 1. Fees requested for drafting and revising meet-and-confer letters did not constitute expenses incurred in preparing the motions. *Id.* Further, counsel failed to allocate costs incurred in making the motions between the law firms of Cane Clark LLP and Hennelly & Grossfeld LLP. *Id.* This court reduced the fees award accordingly and ordered that Palmeri and RHP, pay to Cane Clark LLP and Hennelly & Grossfeld LLP the sums of $570 and $3,300, respectively, not later than January 11, 2008. *Id.* at 2.

On or about December 5, 2007, defendants served supplemental responses to Request Nos. 2, 6, 8, 9, 11 and 17, producing a compact disc containing RHP sales and purchase database information for January 1, 2000 through November 30, 2007, the relevant time period, as well as an affidavit of Palmeri explaining his efforts to further locate responsive documents. Exh. 6, 7 to Decl. (#82). Palmeri stated in pertinent part that he had fully complied with this court's orders (##64,65) by producing all electronically stored sales and purchase data for the above time period, and that such information represented all documentation in his possession concerning WATEC, WAT, LCL and RHP branded products and/or related products. *Id.* Palmeri also averred that he spent "several hours" searching company telephone records by listening to telephone calls on all dates that he believed he could possibly have spoken with anyone regarding the WATEC and RHP trademarks, and Watec America and Watec Japan in general. *Id.* Yet Palmeri was unable to find any additional conversations concerning such matters, other than those protected by the attorney-client privilege which were not produced. *Id.*

Upon receiving defendants' supplemental responses, counsel for plaintiffs determined that production remained deficient. Mot. (#81) at 5. Specifically, counsel found that defendants failed to produce: (1) correspondence with plaintiffs; (2) customer purchase orders for WATEC, WAT, LCL and

6

RHP branded products and corresponding sales invoices; (3) correspondence from their customers concerning WATEC, WAT and LCL branded products; and (4) archives of the www.rock2000.com website containing the alleged infringing use of WATEC, WAT and LCL trademarks. Decl. (#82) at 3-4. Plaintiffs maintain that these omissions violated this court's discovery orders (##28,64,65).

After serving their sixth and seventh Rule 26(f) supplements on January 9, 2008 and January 15, 2008, respectively, *see* Exh. 8, 9 to Decl. (#82), defendants, on January 22, 2008, again supplemented their discovery disclosures. *Id.*, Exh. 10. In this Eighth Supplement, defendants provided to plaintiffs sixteen (16) new documents. *Id.* The documents included, among other things, a letter from Watec America to defendants regarding its buyout of Watec Japan in 1995, faxed to RHP on August 21, 2000; three (3) Watec America price lists which included photographs of the trademark products; and five (5) Watec America product catalogues noting the registrations and claims of ownership over the WATEC, WAT and LCL trademarks. *Id.*

On February 5, 2008, plaintiffs took a videotaped deposition of Palmeri in Pearl River, New York. Exh. 11 to Decl. (#82). When asked if he had read this court's November 21, 2007 orders (##64,65) directing defendants to provide plaintiffs with all documents called for in Request for Production Nos. 2, 6, 8, 9, 11 and 17, or had been advised of such by counsel, Palmeri stated that he did not believe so. *Id.*, Exh. 11 at 51-54. With respect to those documents submitted as part of defendants' Eighth Supplement, *see id.*, Exh. 10, Palmeri stated that they were found as a result of moving offices from one location to another, and that they were not previously known to exist. *Id.*, Exh. 11 at 59-64. When pressed to explain why he had not found the documents before expiration of the court-ordered December 2007 deadlines, *see* orders (##64,65), Palmeri replied that any delay resulted from the manner in which the documents had been stored, in boxes that normally contained electronics equipment and other hardware. *Id.*, Exh. 14 at 65-68.

Also on February 5, 2008, plaintiffs took a videotaped deposition of Daniel Hendrickson ("Hendrickson"), defendants' internet and multimedia developer. *Id.*, Exh. 12 at 73. First, Hendrickson testified that he maintained customer feedback forms identifying when a customer viewing the

7

www.rock2000.com website sent a request for information concerning WATEC, WAT and LCL branded products, but had not been asked by his superiors to undertake a search of those forms to determine whether any were related to the trademarks. *Id.* at 78-80. Second, Hendrickson stated that he maintained computer hard drive archives of some www.rock2000.com website pages from 2005 through 2007, but that he had not been instructed to copy and produce them. *Id.* at 81-82. Third, Hendrickson stated that he possessed an Excel spreadsheet generated and prepared by Palmeri that identified RHP cameras as being manufactured by plaintiffs, a worksheet that plaintiffs now allege was used to illicitly solicit their customers. *Id.* at 83-87; *see also* Mot. (#81) at 9. And Fourth, Hendrickson testified that he had produced certain other responsive documents to defendants' counsel, Kenny Childs ("Childs"), a week before the deposition. *Id.* at 75-77. These materials contained analytical information regarding www.rock2000.com webpages alleged to have displayed the infringing material, such as internet statistics and number counts identifying when customers visited the website and when the website was changed to omit the alleged infringing material. *Id.* During the deposition, Childs stated that he intended to produce the documents, but was waiting until they were all compiled before doing so. *Id.* at 76-77.

**DISCUSSION**

Plaintiffs ask the court to render a default judgment against defendants for violating this court's discovery orders (##28,64,65), pursuant to Rule 37(b)(2)(A)(vi) of the Federal Rules of Civil Procedure. Mot. (#81) at 1. Courts may render a default judgment against "a party or a party's officer, director, or managing agent—or witness designated under Rule 30(b)(6) or 30(a)(4)," who fails to obey a discovery order. Fed. R. Civ. P. 37(b)(2)(A)(vi); *see also FMC v. S.C. State Ports Auth.*, 535 U.S. 743, 758 (2002) ("[A] party failing to obey discovery orders . . . is subject to a variety of sanctions, including the entry of default judgment."). The choice among the various sanctions available under Rule 37(b) rests within the discretion of the district court. *Merrell v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1369 (9th Cir. 1980) (citing Fed. R. Civ. P. 37(b)(2)). A court's use of sanctions, however, is tempered by the requirements of due process. For instance, "when it has been established that failure

8

to comply [with court discovery orders] has been due to inability, and not to willfulness, bad faith, or any fault of [the disobedient party]," sanctions such as dismissal or default judgment are improper. *Societe Internationale Pour Participations Industrielles et Commerciales v. Rogers*, 357 U.S. 197, 212 (1958). Thus, default judgment may not be imposed when the failure to comply with discovery orders is due to circumstances beyond the noncompliant party's control. *G-K Properties v. Redevelopment Agency of San Jose*, 577 F.2d 645, 648 (9th Cir. 1978) (citing *Societe Internationale*, *supra*) (other citations omitted).

A court must consider five factors before dismissing a case or declaring a default: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Adriana Int'l Corp. v. Lewis & Co.*, 913 F.2d 1406, 1412 (9th Cir. 1990) (citations omitted). The court may consider all of a party's discovery misconduct in weighing such sanctions, including conduct which has been the subject of earlier sanction(s). *Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997) (citing *Adriana*, 913 F.2d at 1411) (other citation omitted). "Where a court order is violated, the first two factors support sanctions and the fourth factor cuts against a default." *Adriana*, 913 F.2d at 1412. Therefore, the third factor (prejudice) and the fifth factor (availability of lesser sanctions) are decisive. *Id.*

In this case, the first two factors weigh in favor of default because defendants have violated this court's orders (##28,64,65). On May 8, 2007, this court ordered defendants to produce to plaintiffs all documents called for in Request for Production Nos. 2 and 17 without objection not later than May 21, 2007. Order (#28) at 2. While this court later found that defendants had produced most of these documents, it noted that defendants did so in an untimely manner (almost three weeks after the court-ordered deadline). Order (#64) at 5-6 (citations omitted); *see also* Mot. (#38) at 5-6. This court also determined certain disclosures were inadequate, *i.e.,* the purchase and sale data provided by defendants represented summary information only, thus preventing plaintiffs from independently calculating damages. *Id.* (citations omitted). Lastly, this court found that defendants had failed to pay to plaintiffs'

9

1  counsel $850 as the reasonable attorney's fees incurred in making motion #21, as was previously
2  ordered.  Order (#64) at 6-7 (citing Order (#28) at 2).

3        Defendants' discovery violations, however, were not confined to Order #28.  As noted above,
4  in one of its November 21, 2007 orders (#65), this court required defendants to provide to plaintiffs all
5  documents concerning the purchase and/or sale of "WATEC," "WAT" and "LCL" branded cameras,
6  from January 1, 2000 onwards, and all records of communications between RHP and third-parties and
7  customers.  Order (#62) at 2.  While this court found that the latter information was not reasonably
8  accessible (as there were tens of thousands of recorded telephone conversations, filed neither by name
9  nor customer number), it determined that the importance of the requested information to the issues at
10 stake in the litigation, and the substantial amount in controversy, justified an order compelling further
11 responses to the requests.  Order (#65) at 2-3.  This court therefore ordered defendants to perform a
12 more thorough search of its telephone records.  *Id.*  Palmeri had previously clicked on telephone
13 recording files on or around the times at which he believed the conversations had occurred.  Opp'n
14 (#48) at 9-10.  In response to this court's Order (#65), he went little or no further, merely spending
15 "several hours searching through those phone records by listening to phone calls on any and all dates
16 I believe I could have possibly spoken to anyone regarding the Watec marks, RHP marks, and Watec
17 America Corporation and Watec Co. Ltd. generally."  Exh. 4 to Opp'n (#87) at 20.  This does not
18 constitute the more exhaustive search ordered by this court.  *See* Order (#65) at 2-3.

19       Defendants also made incomplete disclosures in response to this court's November 21, 2007
20 orders (##64,65), and tendered many documents after the court-ordered deadlines had passed.
21 Documents responsive to Request Nos. 6, 8, 9 and 11 were due December 5, 2007, while those
22 responsive to Request No. 2 and 17 were due December 14, 2007.  Order (##64,65).  Defendants did
23 not produce some of these documents until January 22, 2008, including a letter from Watec America
24 to defendants, faxed to RHP on August 21, 2000, regarding its buyout of Watec Japan in 1995; three
25 (3) Watec America price lists which included photographs of the trademark products; and five (5)
26 Watec America product catalogues noting the registrations and claims of ownership over the WATEC,

1  WAT and LCL trademarks. Exh. 14 to Decl. (#82). Moreover, the record demonstrates that defendants
2  have failed to provide plaintiffs with correspondence between them and Watec; customer purchase
3  orders for WATEC, WAT, LCL and RHP products and defendants' corresponding sales invoices; and
4  archives of the www.rock2000.com website containing the alleged infringing use of WATEC, WAT
5  and LCL trademarks. *See* Decl. (#82) at 3-4.

6  Defendants' dilatoriness seems to be the result of a generally casual approach to fulfilling their
7  discovery obligations, as well as miscommunication with their employees and with counsel. For
8  instance, when asked if he had read the November 21, 2007 orders (##64,65) directing defendants to
9  provide plaintiffs with all documents called for in Request for Production Nos. 2, 6, 8, 9, 11 and 17, or
10 had been advised of such by counsel, Palmeri was uncertain and stated that he did not believe so. Exh.
11 11 to Decl. (#82) at 51-54. When defendants finally did take it upon themselves to perform a search
12 for responsive documents, their efforts appear to have been half-hearted, at best. Hence, defendants'
13 complete failure to search an entire storage room which, although normally containing equipment, did
14 hold responsive documents. *Id.*, Exh. 11 at 65-68. Hendrickson's testimony further evidences
15 defendants' failure to perform a thorough search for responsive information — he stated that he was
16 never asked to undertake a search of customer feedback forms identifying when a customer viewing the
17 www.rock2000.com website sent a request for information concerning WATEC, WAT and LCL
18 products, or to produce archived information from the www.rock2000.com website or an Excel
19 spreadsheet that identified RHP cameras as being manufactured by plaintiffs, a worksheet that plaintiffs
20 now allege was used to illicitly solicit Watec's customers. *Id.*, Exh. 12 at 78-87.

21 Perhaps revealing of more egregious discovery violations is Hendrickson's deposition
22 testimony that he had produced certain other responsive documents to defendants' counsel a week
23 earlier. *Id.* at 75-77. The materials contained analytical information regarding www.rock2000.com
24 webpages which are alleged to have displayed the infringing material, such as internet statistics and
25 number counts identifying when customers visited the website and when the website was changed to
26 omit the alleged infringing material. *Id.* Childs responded that he had intended to produce the

documents, but was waiting until they were all compiled. *Id.* at 76-77. This does not justify withholding documents that would have allowed opposing counsel to better prepare for and conduct the deposition, continue the deposition to a later time, or include any such information in dispositive motions, the last day of filing of which was February 7, 2008, two (2) days after the deposition. Order (#72).

Further, assuming for the sake of discussion that plaintiffs have obtained all the information they need, or that defendants are willing to provide it, defendants' repeated failure to provide documents and information in a timely fashion prejudiced plaintiffs' ability to prepare their case for trial. The Ninth Circuit has found that the "failure to produce documents as ordered is considered sufficient prejudice [for the sanction of dismissal]," and that "[b]elated compliance with discovery orders does not preclude the imposition of sanctions. Last-minute tender of documents does not cure prejudice to opponents nor does it restore to other litigants on a crowded docket the opportunity to use the courts." *Payne*, 121 F.3d at 508 (citations omitted). The pertinent issue is not whether the requested party eventually provided information, or is willing to provide it to requesting party, but whether discovery violations prejudiced the latter's ability to prepare for trial. *Id.* (citations omitted). As noted above, defendants have on several occasions not made full and complete discovery responses. Further, several of the discovery responses eventually tendered by defendants came after the court-ordered discovery deadlines had expired, *see* Order (##64,65), or as the discovery period established by the Scheduling Order (#72) was drawing to a close. Plaintiffs were, as a result, often deprived of a meaningful opportunity to follow up on the information, or to incorporate it into their litigation strategy. *See id.* (finding same). Hence, the prejudice factor weighs in favor of a judgment of default.

The fifth factor regarding the availability of lesser sanctions involves consideration of three subparts: "whether the court explicitly discussed alternative sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of dismissal." *Valley Eng'rs v. Electric Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998) (citation omitted). The significance of a warning is that a sanction may be unfair if the party could not have realized that it was in jeopardy of so severe a

consequence if it was in error regarding its discovery posture. Rule 37 tells all lawyers and their clients that dismissal is possible if they violate discovery orders, and direct warnings or other circumstances may make it clear that it is a real risk of continued violation in the particular case. Fed. R. Civ. P. 37(b). In the case at hand, defendants could have legitimately doubted that their discovery violations could result in the severest of sanctions. In its November 21, 2007 orders, this court declined to impose preclusion sanctions, choosing instead to order defendants pay the reasonable expenses incurred by plaintiffs in making their motion (#38). Order (##64,64). In contrast to cases such as *Valley Engineers*, which plaintiffs cite in the present Motion (#81), this court has not expressly warned defendants that further discovery violations might result in "severe" sanctions. 158 F.3d at 1058 (expressly warning that if defendant were to again "try to do something to frustrate the speedy disposition of the case," the court would "consider striking [defendant's] answer on the complaint and dismissing its counterclaim and other cross-actions"). In fact, this court has at most alluded to evidentiary preclusion sanctions as a possible consequence of further discovery violations. *See* Order (#64) at 6 ("The court declines to impose preclusion sanctions at this time . . . ."). Because of this limited admonition and the absence of prior warning or more severe sanctions, the fifth factor weighs against rendering of a default judgment against defendants.

Further, an important consideration for case-dispositive sanctions is whether the discovery violations "threaten to interfere with the rightful decision of the case." *Adriana*, 913 F.2d at 1412. "While contumaciousness toward the court needs a remedy, something other than case-dispositive sanctions will often suffice. Dismissal is appropriate where a 'pattern of deception and discovery abuse made it impossible' for the district court to conduct a trial 'with any reasonable assurance that the truth would be available.'" *Valley Eng'rs*, 158 F.3d at 1057-58 (quoting *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 352 (9th Cir. 1995)). Dismissal or default is justified where a "pattern of deception and discovery abuse make it impossible" for the court to conduct a trial "with any reasonable assurance that the truth would be available." *Id.* Likewise, where the court reasonably anticipates continued deceptive misconduct. *Conn. Gen. Life Inc. Co. v. New Images of Beverly Hills*,

13

482 F.3d 1091, 1097 (9th Cir. 2007) (citation omitted).  As noted above, defendants' failure to timely and sometimes fully comply with this court's discovery orders appears to be the result of a rather nonchalant attitude towards their discovery obligations, as well as inadequate collaboration with their employees and attorneys.  There is little or no direct evidence that defendants deliberately obstructed plaintiffs from gathering relevant information.  Hence, defendants' conduct in the underlying litigation has not cast such a pall upon their "integrity and upon a fair and just resolution on the merits that no alternative sanction could be effective."  *See Valley Eng'rs*, 158 F.3d at 1058.

## RECOMMENDATION

Based on the foregoing, it is the recommendation of the undersigned United States Magistrate Judge that plaintiffs' Motion for Rule 37(b)(2)(A)(vi) Terminating Sanctions (#81) should be denied.

DATED this 9th day of May, 2008.

**LAWRENCE R. LEAVITT**
**UNITED STATES MAGISTRATE JUDGE**